522 P.2d 134 (1974)
CLIMAX URANIUM COMPANY, and Division of State Compensation Insurance Fund, Petitioners,
v.
CLAIMANTS in the Matter of the Death of Edward Stanley SMITH, and Industrial Commission of Colorado, Respondents.
No. 73-247.
Colorado Court of Appeals, Div. I.
March 5, 1974.
Rehearing Denied March 26, 1974.
Certiorari Denied June 3, 1974.
Traylor, Palo & Cowan, Charles J. Traylor, Grand Junction, for petitioner Climax Uranium Co.
*135 Francis L. Bury, Robert S. Ferguson, Denver, for petitioner Division of State Compensation Insurance Fund.
John P. Moore, Atty. Gen., John E. Bush, Deputy Atty. Gen., Peter L. Dye, Asst. Atty. Gen., for respondent Industrial Commission of the State of Colorado.
Overholser & Slee, John W. Overholser, Montrose, for respondents-claimants.
Selected for Official Publication.
SMITH, Judge.
Petitioners, Climax Uranium Company and the Division of State Compensation Insurance Fund, appeal from a final order of the Industrial Commission reversing the referee's order and awarding benefits to claimants upon a finding that the death of Edward Smith, on March 1, 1968, resulted from cancer caused or induced by his exposure to radioactive materials and that his last injurious exposure to such materials occurred at the Henderson Uranium mine owned and operated by Climax.
Decedent Smith worked in uranium mines in Colorado and Utah from 1949 through 1965. His total exposure to radioactive materials in his various employments as a uranium miner was approximately 970 to 1000 working level months.[1] The expert witness, whose qualifications were stipulated to by all parties, testified that this accumulation of radiation exposure established the causal relationship between uranium mining and the lung cancer from which deceased died.
The Henderson mine was the last mine in which decedent was employed. He worked there for only twenty days. The record discloses that decedent received an estimated total radiation exposure of ten working level months during these twenty days. Prior to July 1971, the permissible radiation exposure level established by the Federal Radiation Council was one working level of exposure per month, or twelve working level months of exposure per year. The Environmental Protection Agency subsequently reduced the permissible "safe" level of concentration to four working level months per year. On the basis of these factors, the expert witness testified that decedent had received "potentially injurious exposure" to radioactive materials at the Henderson mine.
Petitioners urge that the Industrial Commission failed to make certain findings of fact that are a prerequisite to an award of benefits being granted. We disagree.
Petitioners first contend that the commission failed to find that the twenty day employment period was of sufficient length to constitute the "last injurious exposure" to radioactive materials. Whether such a finding is required in order to impose liability on petitioners depends upon the construction placed on the term "last injurious exposure."
Under the applicable statutory provision, "injurious exposure" is defined as:
"[T]hat concentration of toxic material which would, independently of any other cause whatsoever, including the previous physical condition of the claimant, produce or cause the disease for which claim is made." C.R.S.1963, 81-18-4(7) (emphasis added)
Liability for an occupational disease is imposed on an employer under the following conditions:
"Where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, [and that employer's insurer] shall alone be liable therefore, without right to contribution from any prior employer or insurance carrier. . . ."
C.R.S.1963, 81-18-13(1)
That section then provides that in the case of silicosis, asbestosis and anthracosis, the "last employer" is the last employer in whose employment the employee was injuriously exposed to the toxic material on each of at least sixty days.
*136 Petitioners urge that the definition of "injurious exposure" in the statute "is a deficient definition in that it omits mention of a time element when applied to the disease of cancer resulting from radiation exposure." Asserting that present medical knowledge demonstrates that cancer caused by exposure to radioactive materials results only after prolonged exposure, petitioners urge this court to rewrite the statute to include this element. The gravamen of petitioner's argument is that it is unfair to impose upon the "last employer" total liability for an occupational disease incurred over a life-time of employment with many employers, particularly where, as here, the length of the last employment was only twenty days out of a period of nineteen years. We find this argument devoid of merit.
The principles applicable to awards for silicosis disability are applicable here. As quoted in Colorado Fuel & Iron Corp. v. Alitto, 130 Colo. 130, 273 P.2d 725:
"The law recognizes the fact that disablement comes only after years of continuous exposure in many cases.. . . The law is premised on the concept that if an employee is accepted into an employment and performs his work successfully for a number of years, and while in such employment he finally becomes totally disabled from silicosis, the employer in whose employment the disability occurs should not be permitted to exempt himself from liability for total disability by asserting that a silicosis condition arose in some prior employment. The disabled employee might have an impossible burden to fix liability. Therefore the statute makes liable only the last employer in which employment the employee was last exposed to harmful quantities of silicon dioxide dust during the period specified in the act." (emphasis in original)
. . . . . .
"The liability of an employer in whose employ an applicant becomes totally disabled from silicosis, is predicated not on having contracted such ailment in his employ, but for exposing such employee to harmful quantities of the dust.. . ." (emphasis added)
The Colorado statute does not require that the last injurious exposure be the cause in fact of the disease. To the contrary, we read the statute as declaring that an injurious exposure is a concentration of toxic material which would be sufficient to cause the disease in the event of prolonged exposure to such concentration. C.R.S.1963, 81-18-4(7). When this section is read together with C.R.S.1963, 81-18-13, we believe there is a clear manifestation of the legislature's intention to hold liable the last employer in whose employment the employee was exposed to injurious concentrations of toxic materials, regardless of the length of the exposure required actually to cause the disease. Colorado Fuel & Iron Corp. v. Alitto, supra.
This reading of C.R.S.1963, 81-18-13 and 81-18-4(7), is buttressed by the exception created for silicosis and other specific diseases, which exception defines "last employer" as the last employer in whose employment the employee was exposed to harmful quantities of silicon dioxide dust, or certain other specified toxic materials, on each of at least 60 days during that employment. No minimum time has been required in the case of radiation exposure. This omission suggests, first, that the legislature intended that liability should be imposed on the last employer responsible for an injurious exposure, regardless of the length of employment, and second, that injurious exposure relates only to that concentration of a toxic material which eventually would cause an occupational disease, not to the length of exposure necessary actually to cause the disease.
Petitioners also argue that the commission's findings state only the ultimate facts and fail to enumerate the evidentiary facts upon which the ultimate facts are based. They contend that there was no finding that the level of radioactive concentration at the Henderson mine constitutes an injurious *137 exposure, that the exposure at the Henderson mine was the last injurious exposure, or that Climax Uranium Company is a Colorado employer and that Henderson Mine is a Colorado site. These alleged errors are groundless.
There is no dispute that decedent's last employment as a uranium miner was with Climax Uranium Company in the Henderson mine, that Climax is a Colorado employer or that Henderson mine is in Colorado. Nor is there any dispute that the level of concentration of radioactive material to which decedent was exposed in the Henderson mine was well above the level established as safe by the appropriate authorities. While the commission's findings are not ideal, they provide this court with sufficient facts upon which to review the order.
Order affirmed.
SILVERSTEIN, C. J., and COYTE, J., concur.
NOTES
[1] The expert witness, Dr. Victor Archer, defined the "working level month" as follows:

"The `working level' was a term coined by Mr. Holaday as an adjunct for measuring the radon daughter level in uranium mines."